## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

*La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including Montgomery County, Prince George's County, and Frederick County, and throughout the United States. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland. MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying "vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez." As with tattoos, some MS-13 members selected more discreet ways of dressing in order to signify their membership and, at the same time, avoid detection by law enforcement.

MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

At all relevant times, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13 had mottos consistent with its rules, beliefs, expectations and reputation including "*mata, viola,*

11

*controla*," which translates as, "kill, rape, control," and, "ver oir y callar," which means, "see nothing, hear nothing and say nothing."

At all relevant times, members and associates of MS-13 frequently engaged in criminal activity as defined in 18 U.S.C. § 1961(1), including, but not limited to, murder, extortion, and dealing in illegal controlled substances, as well as attempts and conspiracies to commit such offenses.  These crimes and acts have been committed by MS-13 members in the District of Maryland within ten years of each other, and affected interstate commerce.  MS-13 members were required to commit acts of violence both to maintain membership and discipline within the gang, as well as against rival gang members.  Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position.  One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible.  Rivals were often referred to as "chavalas."  MS-13, in the area of Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and Lewisdale Crew, among others.

Prospective members who sought to join MS-13 were required to complete an initiation process.  Individuals who associated and committed crimes with the gang, but were not prospective members, were called "paisas."  Individuals who did favors and other acts for the gang were called "paros."  Persons being observed by the gang for potential membership were known as "observations."  Individuals who were attempting to join the gang were called "chequejos," or "cheqs."  Chequejos underwent a probationary period during which they were required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang.  To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.  During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.  Cliques operated under the umbrella rules of MS-13.  MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area, these cliques included Parkview Locos Salvatrucha ("PVLS"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Langley Park Salvatrucha ("LPS"), Weedoms Locos Salvatrucha ("Weedoms"), and Cabanas Locos Salvatruchas ("Cabanas").  MS-13 cliques would combine and work together for various purposes known as "programs."  A person within the participating cliques would be selected as program leader.

MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. §§ 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise").  The Enterprise constituted an ongoing organization whose members functioned as a

12

continuing unit for a common purpose of achieving the objectives of the Enterprise. The purposes of the Enterprise include the following:

     a.     Preserving and protecting the power, territory, and profits of the Enterprise through the use of intimidation and violence, including assaults, murders, and threats of violence;

     b.     Promoting and enhancing the Enterprise and its members' and associates' activities;

     c.     Enriching the members and associates of the Enterprise through extortion and the sale of illegal controlled substances;

     d.     Keeping victims and potential witnesses in fear of the Enterprise and in fear of its members and associates through threats of violence and actual violence; and

     e.     Providing assistance to members and associates, in order to hinder, obstruct and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

From at least January 2015, continuing through at least in or about September 2016, the Defendant, **JOSE AUGUSTIN SALMERON-LARIOS**, a/k/a "**Yankee**," a/k/a "**Kean**" (**SALMERON-LARIOS**"), was a member and associate of MS-13 and the PVLS Clique of MS-13. Further, within this same time period, **SALMERON-LARIOS** served as the MS-13 Maryland Program leader.

From at least in or about January 2015 and continuing through at least in or about September 2016, **SALMERON-LARIOS** knowingly and intentionally conspired with other members and associates of MS-13, and the PVLS Clique of MS-13, to conduct and participate directly and indirectly in the conduct of the affairs of the Enterprise, that is **SALMERON-LARIOS** agreed with members and associates of the MS-13 gang to engage in racketeering activities, including acts involving murder, in order to further the interests of the Enterprise. Further, during this same time period, MS-13 gang members, including members of the PVLS Clique of MS-13, in the District of Maryland and elsewhere, engaged in such racketeering acts.

Specifically, **SALMERON-LARIOS**, in furtherance of the Enterprise, participated in acts in furtherance of the conspiracy from at least in or about January 2015 through at least in or about September 2016, including the following:

     1.     In or about April 2015, **SALMERON-LARIOS** and other MS-13 members and associates traveled to New York, met with MS-13 members there and discussed MS-13 business.

     2.     On or about November 7, 2015, **SALMERON-LARIOS**, along with other MS-13 members and associates, traveled to Hyattsville, Maryland, with the intention to murder Victim-1, who was believed to be a member of the 18th Street Gang. Two other MS-13 co-conspirators and accomplices had been communicating with Victim-1 through internet communication and had lured Victim-1 to a location in Hyattsville, Maryland. **SALMERON-LARIOS** and his two

MS-13 co-conspirators and accomplices were armed with firearms. After arriving at the Hyattsville location, **SALMERON-LARIOS** and two of his MS-13 co-conspirators and accomplices got out of the car while another MS-13 co-conspirator and accomplice waited in the vehicle. Victim-1 arrived in a car driven by another person, Victim-2. An MS-13 co-conspirator and accomplice of **SALMERON-LARIOS** fired his handgun into the vehicle, attempting to kill Victim-1. Victim-1 was struck in the face by one of the gunshots. Victim-1 was transported to a local hospital and was listed in critical condition. Victim-1 survived the shooting, but lost one of his eyes and also sustained loss of hand and leg function. Victim-1 was permanently disfigured as a result of the shooting. After Victim-1 was shot, **SALMERON-LARIOS** and his MS-13 co-conspirators and accomplices returned to the vehicle and left the area. The firearms used during this crime, including the firearm possessed by **SALMERON-LARIOS**, were taken to and left at the residence of the co-conspirator and accomplice who shot Victim-1. **SALMERON-LARIOS** committed the acts set forth in this paragraph for the purpose of gaining entrance to, maintaining, and increasing his position in MS-13.

3.      In or about January 2016, **SALMERON-LARIOS** traveled to Florida and obtained firearms, which were distributed to MS-13 members for use in Maryland.

4.      Between January 2015 and September 2016, **SALMERON-LARIOS** possessed quantities of controlled substances, including cocaine, with the intent to distribute and did distribute such controlled substances for the benefit of MS-13.

5.      On or about June 8, 2016, **SALMERON-LARIOS** and another MS-13 member, via telephone, discussed an attack upon suspected rival gang members. Unknown to **SALMERON-LARIOS** and the other MS-13 member, the telephone conversation was recorded pursuant to a court authorized wiretap. During the conversation, among other things, **SALMERON-LARIOS** discussed providing a firearm to a member of the Sailors Clique to be used against rival gang members in the area of 23rd Avenue in Langley Park "by the towers." **SALMERON-LARIOS** instructed the other party to the conversation where to find the firearm and that it was loaded. In another recorded telephone conversation on the same date, **SALMERON-LARIOS** instructed a different MS-13 member to "loan a firearm to a guy from Sailors," and that the firearm was a "9."

SO STIPULATED:

William D. Moomau
Assistant United States Attorney

Catherine K. Dick
Trial Attorney
U.S. Department of Justice
Organized Crime and Gang Section

Jose Augustin Salmeron-Larios
Defendant

Gerald C. Ruter, Esq.
Counsel for Defendant

15